CLEMON COWENS, Petitioner-Appellant, v. ILLINOIS INSURANCE GUARANTY FUND, Respondent-Appellee.

First District (1st Division)   No. 1—92—0777

Opinion filed June 28, 1993.

Sachs, Earnest & Associates, Ltd., of Chicago (Gregory R. Sun, of counsel), for appellant.

Daniel G. Suber & Associates, of Chicago (Daniel G. Suber, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Clemon Cowens appeals from a February 5, 1992, final order of the circuit court of Cook County which granted summary judgment to defendant Illinois Insurance Guaranty Fund. Plaintiff's action sought a declaration requiring defendant, as successor to the obligations of the now insolvent Reliable Insurance Company (Reliable), to arbitrate plaintiff's uninsured motorist claim. In an oral ruling, now embodied in the final order on appeal, the circuit court determined that plaintiff's arbitration demand was untimely as a matter of law because it was initiated two years following the accident in which plaintiff was injured. Plaintiff's main argument on appeal is that his arbitration demand was timely. We agree.

The record citations supporting plaintiff's "statement of facts" demonstrate that the asserted "facts" are nothing more than references to allegations within plaintiff's initial complaint. This is somewhat misleading. First, the operative complaint is now plaintiff's "5th amended complaint for declaratory judgment and other relief," filed April 11, 1990. Second, defendant by answer has largely denied the allegations of this latter complaint. Finally, plaintiff's October 1990 motion for summary judgment merely incorporated the allegations of this complaint. Thus, contrary to plaintiff's characterization, most of the facts he asserts in his brief are not "facts," but allegations.

Interestingly, defendant, which omitted a statement of facts in its response brief, includes a statement of facts in a supplemental brief. However, the facts there stated are little more than a duplication of plaintiff's initial statement of facts. Indeed, the record citations within this supplemental brief are largely the same as those contained in plaintiff's initial brief. Apparently, the underlying facts are no longer in dispute. This lack of factual dispute bears on the disposition we ultimately make.

In any event, certain undisputed facts *do* appear from the common law record. In an August 1990 motion for summary judgment, defendant admits that it assumed Reliable's obligations upon Reliable's being ordered into liquidation. Defendant further admits that Reliable issued a policy of automobile insurance to plaintiff which included, *inter alia*, uninsured motorist coverage. The language of this policy included the following provision:

> "PART IV—FAMILY PROTECTION COVERAGE
>
> Coverage J—Family Protection (Damages for Bodily Injury). To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury *** sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

An endorsement further provided:

> "AMENDMENT OF ILLINOIS FAMILY AUTOMOBILE
> POLICY INSURING AGREEMENT AND CONDITIONS
> * * *
>
> PART IV—UNINSURED MOTORIST
> * * *
>
> It is further agreed no suit, action or arbitration proceedings for the recovery of any claim under Family Protection/Uninsured Motorists Coverage shall be sustainable in any court of law or equity unless the insured shall have fully complied with all of the terms of this policy, *nor unless commenced within two (2) years after the occurrence of the loss.*" (Emphasis added.)

Defendant in its motion for summary judgment also admitted that plaintiff was involved in an accident on August 16, 1983, with an alleged uninsured motorist. Finally, defendant acknowledged that Reliable received on May 5, 1986, plaintiff's written demand for arbitration. In its summary judgment motion, defendant argued that the date of accident equalled the "date of loss" for purposes of the policy's two-year limitation provision; thus, plaintiff's arbitration demand was too late.

Plaintiff also filed a motion for summary judgment. The motion requested that the court grant the relief requested in his fifth

amended complaint, which sought a declaration that defendant was required to arbitrate plaintiff's claim. Plaintiff incorporated the allegations of his fifth amended complaint to support his motion.

At the summary judgment stage of the proceedings, the case was before the Honorable Judge Scotillo. Following briefing and argument on the parties' respective summary judgment motions, Judge Scotillo on December 27, 1990, entered an order which granted defendant's motion for summary judgment, denied plaintiff's motion for summary judgment and dismissed plaintiff's fifth amended complaint with prejudice.

Plaintiff thereafter filed a motion for reconsideration. On May 28, 1991, Judge Scotillo granted plaintiff's motion to reconsider, vacated his prior order granting defendant summary judgment and ordered the matter to be reassigned.

On June 28, 1991, defendant filed a motion to reconsider the May 28, 1991, order or, in the alternative, for leave to file an interlocutory appeal. On July 23, 1991, the matter was transferred to Judge Hourihane who, for reasons which are not altogether clear, restyled defendant's motion into a renewed motion for summary judgment. Anyway, on February 5, 1992, Judge Hourihane granted defendant summary judgment. The court orally indicated that the two-year contractual limitation provision within the policy's endorsement was not ambiguous and obligated plaintiff to initiate arbitration proceedings within two years from the date of accident. Plaintiff appeals this ruling.

For the sake of being complete, and given that plaintiff is appealing from an award of summary judgment (which requires this court to construe the evidence in the light most favorable to plaintiff), the record can be construed to include the following matters as well.

Plaintiff's August 16, 1983, automobile accident involved Otha G. Kimbrough. On October 3, 1983, plaintiff sent Kimbrough an attorney's lien and a letter requesting insurance information. Plaintiff alleges in his complaint that Kimbrough did not respond.

On October 18, 1983, plaintiff sent to the Illinois Department of Transportation, Financial Responsibility Section, a "Motorist Report of Illinois Motor Vehicle Accident" form. Plaintiff in his cover letter requested information regarding Kimbrough's insurance status at the time of the accident. Plaintiff alleges that he received no response from the Department of Transportation.

Plaintiff also sent Reliable an attorney's lien on October 22, 1983. Plaintiff's cover letter indicated that, following an investigation, Kimbrough "appeared" to be an uninsured motorist. Reliable responded November 16, 1983, that it was in receipt of plaintiff's lien. This re-

sponse requested "all supporting documentation" and asserted that, following investigation, plaintiff would be contacted to discuss settlement. Plaintiff alleges in his complaint that he thereafter sent Reliable his special damages and that, in a telephone conversation with a Reliable claims adjuster, he learned Reliable would not discuss the matter until it received proof of Kimbrough's uninsured status.

On July 10, 1985, plaintiff filed an action against Kimbrough in the circuit court of Cook County. This action was filed within two years of the accident.

On April 30, 1986, Kimbrough provided plaintiff with an affidavit stating that he had no automobile liability insurance at the time of the accident. This affidavit was incorporated by reference into plaintiff's fifth amended complaint, which, as noted, plaintiff incorporated into his motion for summary judgment.

On May 5, 1986, plaintiff demanded arbitration in writing. Reliable responded shortly thereafter that plaintiff's demand for arbitration was untimely. On October 27, 1986, plaintiff instituted the instant action.

> "The law is a profession of words." Mellinkoff, The Language of the Law vii (1963), cited in Edward D. Re, Brief Writing and Oral Argument, 2 (5th ed. 1983).

The controlling issue on appeal turns on the interpretation to be given to the phrase "nor unless commenced within two (2) years after the occurrence of the loss." The circuit court interpreted the term "loss" to mean "accident." We find this construction to be erroneous as a matter of law.

The rules of contract construction apply to insurance policies, which courts interpret as a matter of law. (*E.g., Heneghan v. State Security Insurance Co.* (1990), 195 Ill. App. 3d 447, 453, 552 N.E.2d 406.) One of the fundamental rules of contract interpretation is that the court should seek to interpret provisions in accordance with the intent of the parties. (*Heneghan*, 195 Ill. App. 3d at 453.) Also, in interpreting the provisions of an insurance contract, the entire document should be examined, considering the language of the policy as well as the subject matter and purpose of the contract. *Shelton v. Country Mutual Insurance Co.* (1987), 161 Ill. App. 3d 652, 655-56, 515 N.E.2d 235.

Here, it is clear that the parties did not intend the terms "accident" and "loss," neither of which is defined in the policy, to be synonymous. Reliable's policy simultaneously employs the words "loss," "accident" and "occurrence." For example, the notice provision of the policy states: "In the event of an accident, occurrence or loss,

written notice \*\*\* shall be given \*\*\* as soon as practicable." Another provision within the policy provides that· "[t]his policy applies only to accidents, occurrences and loss during the policy period while the automobile is within the Unites States."

■ Applying fundamental canons of contract construction to the parties' contract, it is apparent that the parties did not intend "loss" to mean "accident" and "accident" to mean "loss." In short, "accident" means "accident" and "loss" means "loss." The policy in this regard is unambiguous. Had the parties intended "loss" to mean "accident" in the phrase in question, they merely would have used the term "accident." See *Shelton,* 161 Ill. App. 3d at 655 (policy provided that "arbitration will be barred unless commenced within two years after the date of the accident").

The foregoing analysis only begs the following question: what does "loss" mean? Clearly, like the term "accident," "loss" refers to an event. This is all the more clear when one considers that, in the limitation provision in question, the policy requires that arbitration be commenced "within two (2) years after the occurrence of the loss." It is also worth pointing out that it is a limitation provision which this court is being asked to interpret. Some event must trigger the running of the limitations clock. Here, it is "the occurrence of the loss."

■ While, as noted above, "loss" cannot be synonymous with "accident," a reasonable construction of the policy is that the two terms have a cause and effect relationship. An "accident" produces a "loss," but the opposite is not true: a "loss" does not produce an "accident." "Accident" is the cause, while "loss" is the effect. The cause and effect relationship of the two cannot be ignored. Further, a "loss" can be fixed in duration; however, it need not be. This is a critical observation within the context of the limitations clause at issue because the limitation clock does not *begin* to run until *"after* the occurrence of the loss." (Emphasis added.)

Cases which have interpreted the limitation clause in question generally agree that "loss" can indeed extend in time beyond the happening of the underlying "accident." (*Glenn v. Prestige Casualty Co.* (1993), 246 Ill. App. 3d 909; *Whiting v. Prestige Casualty Co.* (1992), 238 Ill. App. 3d 376, 606 N.E.2d 397; *McCray v. Merit Insurance Co.* (1992), 233 Ill. App. 3d 36, 598 N.E.2d 366; *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 557 N.E.2d 1281; *Heneghan v. State Security Insurance Co.* (1990), 195 Ill. App. 3d 447, 552 N.E.2d 406.) Frequently, for example, determining whether the party causing the insured's injury is uninsured requires litigation. (*E.g., Comet Casualty Co. v. Jackson* (1984), 125 Ill. App. 3d 921, 467

N.E.2d 269.) This litigation may extend beyond two years of the accident. If defendant's interpretation of the term "loss" were to be applied in such a case, its own insured would be precluded from receiving uninsured motorist benefits coverage even before the insured established that he was in fact injured by such a motorist. Obviously, this is an absurd result, which the parties could not have intended.

The foregoing analysis is sufficient to reverse the circuit court, which granted defendant summary judgment on the premise that "loss" meant "accident." However, judicial economy requires that we consider another disposition.

As noted, defendant's supplemental brief recites as fact, *inter alia*, the existence of the Kimbrough affidavit. Defendant apparently does not contest the authenticity of this affidavit, and the record reveals no reason to challenge its authenticity. It was executed sometime in April 1986, and plaintiff demanded arbitration in writing on May 5, 1986. Plaintiff's demand, therefore, was timely as a matter of law.

There being no genuine issue of material fact, and pursuant to Supreme Court Rule 366(a)(5), we reverse and remand the case to the circuit court with directions to enter summary judgment for plaintiff declaring his entitlement to arbitration of his uninsured motorist claim. See *McCray v. Merit Insurance Co.* (1992), 233 Ill. App. 3d 36, 40, 598 N.E.2d 366 (granting similar relief).

In passing, we are aware of *Buchalo v. Country Mutual Insurance Co.* (1980), 83 Ill. App. 3d 1040, 404 N.E.2d 473, a First District, First Division case (Campbell and O'Connor, JJ., concurring). Plaintiff there appealed from the dismissal of his September 15, 1978, petition to compel arbitration. The date of accident was March 27, 1976, and plaintiff's written demand for arbitration occurred on May 8, 1978. The basis of the dismissal was the policy language that arbitration must be commenced "within two years after the occurrence of the loss."

The appellate court affirmed the dismissal. Language of the court's opinion arguably could be read as contradicting the language of the instant opinion. For example, we expressly found "no ambiguity in the above-quoted policy provision." (*Buchalo*, 83 Ill. App. 3d at 1045.) This court opinion had previously quoted certain policy language, including the same two-year limitation provision as in this case. Later in the opinion, we refer to the May 8, 1978, letter from the insured to the insurer demanding arbitration. We note that this letter was sent "after expiration of the policy limit of time for the demand [of arbitration]." *Buchalo*, 83 Ill. App. 3d at 1046.

*Buchalo* is distinguishable. First, the opinion does not directly construe the term "loss." Apparently, the parties did not contest the meaning of the term. Second, the insured there was injured in a hit-and-run accident. Here, a question did exist as to whether Kimbrough was insured and, thus, whether uninsured motorist coverage existed in the first place. Finally, our conclusion in this case does not rest upon a determination that the term "loss" is ambiguous. Rather, the analysis here rejects the argument that "loss" and "accident" are synonymous and determines that a "loss" can be reasonably construed to be ongoing for purposes of the limitation provision in the instant policy. For these reasons, *Buchalo* does not foreclose our holding herein.

The above disposition obviates the need to discuss plaintiff's other arguments on appeal.

For the foregoing reasons, we reverse the February 5, 1992, order of the circuit court which granted defendant summary judgment. We direct the circuit court on remand to enter summary judgment for plaintiff declaring his entitlement to arbitration of his uninsured motorist claim.

Reversed and remanded with directions.

MANNING, P.J., and BUCKLEY, J., concur.